# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRITTANY RIGO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 14-CV-663-JED-FHM |
| v. ) | |
| ) | |
| APEX REMINGTON, INC., ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

**I.   Background**

In this employment discrimination action, plaintiff, Brittany Rigo, alleges violations of Title VII of the Civil Rights Act of 1964, on the basis of gender discrimination and unlawful retaliation.  Plaintiff, a female, began working as a receptionist at Remington Pipe & Supply Company (Remington) in September 2008. At the time, Remington was owned by co-founder, president, and chief executive officer Colby Forrester, who was plaintiff's brother-in-law. Plaintiff's sister also worked at the company and was plaintiff's supervisor.  Mr. Forrester hired plaintiff, and she worked in a number of different positions.  In the fall of 2009, Forrester sold the company to Apex Distribution, Inc., and it was renamed Apex Remington, Inc. (Apex).  Apex was subsequently purchased by Russell Metals, Inc. (Russell Metals) in November 2012, and Forrester resigned as president of the company in April 2013 and departed on May 17, 2013.  At that point, plaintiff was working as a Special Projects Coordinator in the company's Human Resources Department (HR), under the new HR head, Lucy Cravens.

Plaintiff generally alleges that, after the management changes in 2013, she was treated differently than her male co-workers and was subjected to stereotyping. (Doc. 26 at 1).  She specifically alleges that, when she pointed out grammatical errors in a brochure, Calvin Cannon,

who was the President of Apex at the time, said she was "acting like a woman."[1]  For her retaliation claim, plaintiff asserts that, after she submitted a written complaint about gender discrimination to her HR supervisor (on June 25, 2013), she was terminated and was "given no legitimate reason for her termination. . . ."  (Doc. 2-3 at 3, ¶¶ 14-16).

Apex asserts that plaintiff was discharged from employment based upon a history of insufficient work performance and attitude problems.  Apex has submitted evidence to support its position that plaintiff was terminated because she frequently failed to finish assigned tasks, exerted minimal efforts, maintained a terrible attitude towards others at the office, complained about every job that was assigned to her, frequently avoided work, played on her iPad, did shopping online, worked on homework while at work, and fell asleep at her desk when she was supposed to be working.  (*See* Doc. 20-6, 20-7, 20-8, 20-11).  Apex asserts that, during the time that plaintiff's brother-in-law (Forrester) ran the company, plaintiff's behavior was tolerated, and such behavior continued after Forrester left.

Plaintiff's supervisor, Lucy Cravens, testified to the reasons that she terminated the plaintiff's employment.  Ms. Cravens indicated that, when plaintiff was assigned a new job duty in electronic billing, plaintiff appeared uninterested in learning and, in the days that followed, plaintiff kept her office door closed. (Doc. 20, 20-5 at 1).  Plaintiff then complained about covering the phones, even though Cravens had already given instructions as to covering the phones when the receptionist was away from her desk for more than a few minutes.  (*Id.*).  Plaintiff had informed other employees that she did not have to cover the phones, and she argued with Cravens as to why

---

[1]    Mr. Cannon denied that he ever made that comment, and he explained the conversation that he had with plaintiff in a much different light than plaintiff has alleged.  (*See* Doc. 20-11 at 4-5 [Dep. pp. 16-18]).  For purposes of this motion, the Court construes the evidence in favor of plaintiff and thus assumes that Cannon made the statement.

2

she had to cover the front desk while having to do other tasks, and plaintiff complained that the assignment was ridiculous. (*Id.*). According to Cravens, "[w]hen plaintiff goes into this mode she talks 90 miles an hour, and [Cravens told] her that the issue . . . was not just covering the front desk but . . . was [plaintiff's] attitude. *Everything we bring to her she complains about or doesn't want to do or never does the job completely.*" (*Id.*). Three days later, Cravens noticed plaintiff's door was again closed even though she was not completing much electronic invoicing. Cravens then sent plaintiff an email to confirm a conversation with plaintiff and to outline what was expected of her. Among other things, in her email, Cravens identified a "goal" for plaintiff to complete 30 to 50 invoices daily, and Cravens instructed plaintiff to keep her office door open so that other team members would know plaintiff was in the office and available to assist when needed. (*See id.*; *see also* Doc. 20-5 at 19).

Cravens encountered "pushback" in a response email from the plaintiff, who questioned the setting of the goals and wanted clarification of exactly how far "open" her door must be. (*See id.* at 19-20). Cravens explained that such pushback "is just an example of how every instruction with [plaintiff] goes." (*Id.* at 17). Shortly after plaintiff sent the response, she sent an email to Cravens and Cannon, complaining about several instructions, job assignments, and supervisory issues. (*See id.* at 22). Cravens further explained her decision to terminate plaintiff as follows:

> Q. Okay. So what led to her termination? Why was she terminated?
>
> A. This. Having to deal with this [referring to the communications and pushback from plaintiff on June 21-25] on a regular basis. Any other employee that I gave specific instructions to, I don't get this much pushback on everything. It – [the email] plainly states [the 30-50 invoices per day] is a goal. [Plaintiff] questions it again. The door open. She wants to know how far it has to be open. If it says the door is to be open, open the door. You want to argue with how far it has to be open? You can see the stuff that I – I dealt with on a daily and a weekly basis, anything. Anytime anything changes, anytime anything was expected, anytime there was an issue, this is what I dealt with. . . .

3

> Q. Okay. Then why did you terminate her instead of just issuing a written warning?
>
> A. The attitude and the drama, I was not going to deal with it anymore. I was done. Everything was a fight. Everything was a pushback. I couldn't before. Colby Forrester resigned on April 9th. He didn't physically leave until May 17th. I couldn't do anything with her before then.
>
> Q. Why not?
>
> A. [Plaintiff is] his wife's sister.

(Doc. 20-5 at 7, 9 [Dep. pp. 27-28, 34-35]).

Subsequent to her termination, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, which issued her a Notice of Right to Sue. (Doc. 2-3 at 1-2). On October 13, 2014, plaintiff filed her petition in the district court for Tulsa County, Oklahoma. *Id.* at 1. Defendant timely removed to this Court and now moves for summary judgment. (Doc. 20).

## II. Summary Judgment Standards

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The courts thus determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The non-movant's evidence is taken as true, and all justifiable and reasonable inferences are to be drawn in the non-movant's favor. *Id.* at 255. The court may not weigh the evidence and may not credit the evidence of the party seeking

summary judgment, while ignoring evidence offered by the non-movant. *Tolan v. Cotton*, ___ U.S. ___, 134 S. Ct. 1861, 1866-68 (2014) (per curiam).

**III. Analysis**

**A. Gender Discrimination (First Claim)**

Plaintiff first alleges that Remington terminated her employment because of her gender. (Doc. 2-3 at 3-4). Title VII makes it unlawful for an employer "to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff proves a Title VII violation "either by direct evidence of discrimination or by following the burden-shifting framework of *McDonnell Douglas*." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). In the absence of direct evidence of discriminatory intent, the Court must analyze the evidence under *McDonnell Douglas*. *Riser v. QEP Energy*, 776 F.3d 1191, 1199-1200 (10th Cir. 2015). Under the *McDonnell Douglas* framework, the plaintiff "must carry the initial burden under the statute of establishing a prima facie case of . . . discrimination." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000) (citations omitted). "Once the plaintiff has established a prima facie case, '[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason' for its employment action. If the defendant makes this showing, the plaintiff must then show that the defendant's justification is pretextual." *Id.*

Apex argues that summary judgment is appropriate because plaintiff can neither establish a prima facie case nor show pretext. (Doc. 20 at 13-17). Plaintiff argues that she has carried her burden of establishing a prima facie case and that she has presented sufficient evidence of pretext to preclude summary judgment. (Doc. 26 at 17-23).

5

### 1.     Prima Facie Case

Plaintiff has the burden of establishing a prima facie case "by a preponderance of the evidence," a burden which is "not onerous." *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005) (quotations and citations omitted). To establish a prima facie case, a plaintiff must show (1) membership in a protected class and (2) an adverse employment action (3) that took place under circumstances giving rise to an inference of discrimination. *Daniels v. UPS, Inc.*, 701 F.3d 620, 627 (10th Cir. 2012) (citing *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007)). "The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred 'under circumstances which give rise to an inference of unlawful discrimination.'" *Kendrick*, 220 F.3d at 1227 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Plaintiff's burden at this stage is *de minimis*. *Plotke*, 405 F.3d at 1101.

The first component is satisfied because, as a female, she is a member of a protected class under Title VII. (Doc. 26 at 23 of 31). The second prong is also satisfied, in that she was terminated, which is an adverse employment action. Thus, the determination of whether plaintiff has presented evidence to establish her prima facie case depends upon whether the termination was under circumstances giving rise to an inference of discrimination under the third prong.

Plaintiff asserts that the position was not eliminated upon her firing, and she was terminated without any "written or formal discipline," so as to give rise to an inference of discrimination because of her sex. Her job was filled by a woman, Jessica Clark. (Doc. 20 at 15 of 27). Plaintiff also alleges that, at "[a]round the time the company was adjusting to the transition in leadership [after her brother-in-law resigned]," plaintiff voiced a concern to Calvin Cannon, the President of Apex, about errors on a pamphlet that a male employee wanted to send to customers. (*See* Doc. 26 at 17 of 31). According to plaintiff, Cannon was dismissive of her concerns and "said she was

'just acting like a woman.'" (*Id.*). While the language is not gender-neutral, plaintiff has not provided any evidence that the context of the alleged statement by Mr. Cannon had any nexus to the subsequent termination of plaintiff's employment, and her evidence does not support any inference that she was discharged for a discriminatory reason or because of her sex, in violation of 42 U.S.C. § 2000e-2(a). Cannon's alleged statement is best characterized as a "stray remark" or "isolated [or] ambiguous comment," which is generally "insufficient to create a jury issue in an employment discrimination case." *See Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1140 (10th Cir. 2000) (stray remark regarding plaintiff's age was not direct evidence of plaintiff's discriminatory termination). "A plaintiff must demonstrate a nexus exists between the allegedly discriminatory statement and the company's termination decision . . . and therefore 'that [sex] actually played a role in the defendant's decisionmaking process and had a determinative influence on the outcome.'" *Id.* (quoting *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1455 (10th Cir. 1994)).

Plaintiff has not established a prima facie case of discriminatory discharge, which renders judgment as a matter of law appropriate for the defendant. In the alternative, even assuming plaintiff's evidence were sufficient to meet her obligation to establish a prima facie case of discriminatory termination, she has not demonstrated that Apex's proffered legitimate, non-discriminatory reasons for her termination were pretextual, as will be discussed below.

2.  **Legitimate Nondiscriminatory Reasons**

Assuming that plaintiff had made out a prima facie claim, the burden of production would shift to Apex to present a legitimate nondiscriminatory reason (LNDR) for its action in terminating plaintiff's employment. *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1224 (10th Cir. 2007). The burden at this stage is not heavy. *See Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1363 (10th Cir.

1997) ("This burden is exceedingly light; the defendant must merely proffer non-gender based reasons, not prove them.") (internal quotations marks omitted)).

Apex has offered sufficient evidence of LNDRs to terminate the plaintiff's employment. Cravens testified that she terminated plaintiff because of plaintiff's unwillingness to follow instructions and her poor work performance. (Doc. 20 at 13-15 of 27). She also felt plaintiff's termination was justified based on her constant complaining and pushback. (*Id.*). Cravens testified that she felt that she could not fire plaintiff until plaintiff's brother-in-law had departed. (*Id.*). Apex presented evidence that plaintiff rebuffed new work assignments, gave her supervisor push back regarding anything asked of her, consistently complained, and refused at times to follow her supervisor's directions. The record also includes evidence that plaintiff worked on school homework during work hours, slept at her desk, and frequently questioned directives or assignments instead of doing the tasks assigned. Apex has met its burden to show a LNDR.

### 3. Pretext

Because Apex has articulated LNDRs for terminating plaintiff, she must show that Apex's articulated reasons are pretextual. At summary judgment, the Court need only determine whether the evidence plaintiff has presented, viewed in a light favorable to her, would allow a reasonable jury to find that Apex's reasons were pretextual. *See Etsitty*, 502 F.3d at 1220. "A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *Id.* at 1225 (quotations omitted). The Court must examine the facts "as they appear[ed] *to the person making the decision*." *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1044 (10th Cir. 2011) (emphasis in original) (quoting *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1166 (10th Cir. 2007)). "[W]e do not ask whether the employer's proffered reasons were wise, fair, or correct; we ask only

whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs." *Debord v. Mercy Health Sys. of Kan., Inc.*, 737 F.3d 642, 655 (10th Cir. 2013).

For pretext, plaintiff argues that she timely complied with her job duties, paid attention to detail, and assisted others, and that, as a result, Apex's reasons for terminating her must be pretextual. (Doc. 26 at 20). Plaintiff's evidence of her job qualifications includes her own deposition, but her opinions about her own qualifications do not give rise to a material fact dispute here. *See Simms v. Okla. Dep't of Mental Health*, 165 F.3d 1321, 1329 (10th Cir. 1999) ("an employee's own opinions about his . . . qualifications [do not] give rise to a material factual dispute."). A challenge of pretext requires the Court to look at the facts as they appear to the person making the decision. "It is the manager's perception of the employee's performance, and not the employee's subjective evaluation of her performance, that is relevant in determining pretext." *Kendrick*, 220 F.3d at 1231.

Plaintiff also claims that Calvin Cannon's comment is sufficient to show discriminatory motive and thus pretext. (Doc. 26 at 25-26 of 31). As previously noted, Cannon's alleged statement that plaintiff was "acting like a woman" in connection with a writing that plaintiff had not completed is most properly characterized as an isolated or stray remark, and plaintiff has not established a nexus between the statement and the termination decision. As such, it is insufficient to create a jury issue in a Title VII case. *See Stone*, 210 F.3d at 1140; *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994); *see also Sandoval v. City of Boulder*, 388 F.3d 1312, 1327 (10th Cir. 2004) (two sexist comments insufficient to show hostile work environment or discriminatory harassment). Also, as noted, plaintiff has not established any nexus between that comment and her subsequent termination.

9

Plaintiff also argues that Calvin Cannon, not Lucy Cravens, was the decision-maker responsible for plaintiff's termination. (Doc. 26 at 26-27 of 31). Apex has presented evidence that Lucy Cravens made the final decision to terminate the plaintiff's employment. (*See, e.g.,* Doc. 20-5 at 6 of 26 [Dep. p. 23, ll. 8-14]; *id.* at 7 of 26, [Dep. pp. 27-28]; *id.* at 9 of 26 [Dep. p. 35]; *id.* at 12 of 26 [Dep. p. 47]; *id.* at 16-18). Plaintiff has presented evidence that Cravens conferred with Cannon before terminating plaintiff's employment, and that Cannon agreed with the decision to terminate her. (*See* Doc. 26-8 at 47:17-22 [Cannon told Cravens it was her decision and he agreed with her decision]; Doc. 26-10 at 14:4-10 [Cannon told Cravens, "if you need to get rid of [plaintiff], let's get rid of her," then Cravens called HR in Canada to help her make a decision, and Cannon learned the next day that plaintiff "was let go"]; and Doc. 26-6 at 2 [Cravens noted that, after receiving the June 25 emails from plaintiff, she conferred with Cannon and "[h]e agreed with [Cravens] and [her] concerns and told [her] to go ahead and make the change and let her go"). Assuming that Cannon was involved in, or approved of, the decision to terminate plaintiff's employment, plaintiff has still not provided any evidence that such a decision was motivated by sex discrimination.

Plaintiff has not carried her burden to demonstrate that Apex's stated LNDRs were pretext for a termination that was actually based on gender discrimination. Because plaintiff cannot show pretext, summary judgment is warranted as to plaintiff's claim for gender discrimination under Title VII.

**B. Retaliation (Second Claim)**

Apex argues that plaintiff cannot present evidence supporting her retaliation claim. Under 42 U.S.C. § 2000e-3(a), it is "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful

employment practice. . . ." Although the statute does not refer to such discrimination as "retaliation," the courts have so named claims under § 2000e-3(a). A plaintiff may establish retaliation by presenting direct evidence of retaliatory motivation or, in the absence of direct evidence, a plaintiff must establish a prima facie case under the *McDonnell Douglas* framework. *Conroy v. Vilsack*, 707 F.3d 1163, 1171 (10th Cir. 2013).

To establish a prima facie case of retaliation, the plaintiff has the initial burden to show that (1) she engaged in a protected activity; (2) she suffered a material adverse action; and (3) there was a causal connection between the protected activity and the adverse action. *Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 514 (10th Cir. 2015); *see also Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006). To establish a causal connection between the protected activity and the adverse employment action, plaintiff must present evidence of circumstances that justify an inference of retaliatory motive. *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014) (citation omitted). The Supreme Court construes the causation requirement as requiring a showing that the employer's desire to retaliate was the but-for cause of the challenged employment action. *See Univ. of Texas Southwestern Med. Ctr. v. Nassar*, ___ U.S. ___, 133 S. Ct. 2517, 2528 (2013); *Thomas*, 804 F.3d at 516, n.8 (applying *Nassar* at the summary judgment stage).

Apex argues that plaintiff did not engage in a "protected activity," because she did not expressly reference sex discrimination. In support of its argument, Apex cites part of a June 25, 2013 email from plaintiff to Cravens and Cannon, before her termination, in which plaintiff referenced a feeling that she was being discriminated against:

> It feels to me like anytime I seek advice or go to my leadership team with a concern, the problem is turned around on me and I am made to feel like I am in the wrong and I'm not sure if this is discrimination against me because I am related to the former president of the company or if it is just a personal attack on me.

11

(Doc. 20-5 at 22). Plaintiff's feeling of being treated differently because of a familial relation is not a protected activity, as familial relation is not a protected status under Title VII. As a result, it does not support a retaliation claim under § 2000e-3, which prohibits adverse employment actions against an employee "because [s]he has opposed any practice made an unlawful employment practice."

However, plaintiff's June 25 email also included a statement that she did "not feel comfortable going to [Cannon] with questions or concerns" because of his prior statement that she "was acting 'like a woman.'" (*Id*. at 23). She further stated that "I feel like this is grounds for discrimination as well as unfair office practices [and] [i]t feels like because I am a woman, I should not express my concerns." (*Id.*). Her statement that she felt discrimination "because I am a woman" could be understood as a complaint of sex discrimination. In his deposition, Cannon indicated his understanding that plaintiff's email contained a "claim of discrimination based on gender." (*See* Doc. 26-10 at 11 [Dep. p. 22, ll. 10-12]). "[N]o magic words are required" in order to qualify as protected opposition to discrimination. *See Hinds v. Spirit / United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008). In order to qualify as protected speech, "the employee must convey to the employer his or her concern that the employer has engaged in [an unlawful] practice." *Id.* As the Court is to construe the evidence in a light most favorable to the plaintiff and must not weigh the evidence, the plaintiff's allegation of employment discrimination "because [she is] a woman" is sufficient to support plaintiff's claim that she engaged in protected activity. Her stated opposition to alleged sex discrimination "could be protected even if she were wrong about whether [the employer] had in fact engaged in a violation of Title VII; it would be enough if she had a 'good faith belief that Title VII ha[d] been violated.'" *Peterson v. Utah Dept. of*

*Corrections*, 301 F.3d 1182, 1188 (10th Cir. 2002) (quoting *Love v. ReMax of Am., Inc.*, 738 F.2d 383, 385 (10th Cir. 1984)).

With respect to the second element of her retaliation claim, plaintiff's employment was terminated soon after she sent the June 25 email. Termination is plainly a materially adverse employment action. The third element of plaintiff's prima facie case – a causal connection between her protected activity (her reference to alleged "discrimination" because she is a woman) and the adverse action (termination of her employment) – is also supported by the evidence. There is evidence that, after plaintiff sent the June 25 email, Cravens called Cannon and read the email to him, and Cravens terminated plaintiff's employment three to four hours later. (*See* Doc. 26-8 at 12 [Dep. p. 41:5-18]). The requisite causal connection may be established by "'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239-40 (10th Cir. 2004) (quoting *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1320 (10th Cir. 1999)). The evidence that plaintiff was discharged from employment just hours after alleging discrimination based on her sex is sufficient to present an issue of fact as to alleged causation.

As discussed with respect to her gender discrimination claim, Apex has provided LNDRs that plaintiff was terminated for performance-related issues. Unlike the evidence supporting plaintiff's gender discrimination claim, plaintiff has presented evidence as to her retaliation claim that presents an issue of fact as to whether Apex's LNDRs were a pretext for what was actually a retaliatory discharge for plaintiff's allegation of discrimination based on sex. Mr. Forrester testified that, shortly after plaintiff was terminated from Apex, Forrester spoke to Cannon. According to Forrester, Cannon stated that plaintiff "brought up the word discrimination, and I'm not going to tolerate that crap and I'm not going to ever put myself in that position . . . where I

have to deal with a discrimination case." (Doc. 26-2 at 4 [Dep. p. 11:1-5]). In his deposition, Cannon agreed that he told Forrester that plaintiff's email, which contained an allegation of "discrimination based on gender," was "crap." (Doc. 26-10 at 10-11 [Dep. pp. 21-22]). For the reasons set forth herein, there is a genuine dispute of material fact with respect to plaintiff's retaliation claim, precluding summary judgment on that claim.

IV. **Conclusion**

For the foregoing reasons, Apex's motion for summary judgment (Doc. 20) is **granted** as to plaintiff's First Claim for gender discrimination under Title VII and is **denied** as to her Second Claim under Title VII for retaliation.

DATED this 13th day of September, 2017.

							_____
							JOHN E. DOWDELL
							UNITED STATES DISTRICT JUDGE